The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Dr. William Gardner, DDS

**(b)** County of Residence of First Listed Plaintiff: **Sandoval**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
. Patrick Laux, The Omni Firm, 625 W Southern Ave, E-167, Mesa AZ 85210 (623)206-0040

## DEFENDANTS
Delta Dental Plan of New Mexico, Delta Dental Plan of Michigan, Edward J. Lopez, Jesus Galvan, Jason Snider

County of Residence of First Listed Defendant: **unknown**
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*
unknown

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*
- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [x] 3 Federal Question (U.S. Government Not a Party)
- [ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*   Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | PERSONAL INJURY | PERSONAL INJURY | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **PROPERTY RIGHTS** | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | | | [ ] 820 Copyrights | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | | | [ ] 830 Patent | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | | | [ ] 840 Trademark | [ ] 460 Deportation |
| | | PERSONAL PROPERTY | **LABOR** | [ ] 880 Defend Trade Secrets Act of 2016 | [x] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards Act | | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 371 Truth in Lending | [ ] 720 Labor/Management Relations | **SOCIAL SECURITY** | [ ] 485 Telephone Consumer Protection Act |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 380 Other Personal Property Damage | | [ ] 861 HIA (1395ff) | [ ] 490 Cable/Sat TV |
| [ ] 195 Contract Product Liability | | [ ] 385 Property Damage Product Liability | [ ] 740 Railway Labor Act | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 196 Franchise | [ ] 362 Personal Injury - Medical Malpractice | | [ ] 751 Family and Medical Leave Act | [ ] 863 DIWC/DIWW (405(g)) | |
| | | | | [ ] 864 SSID Title XVI | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 790 Other Labor Litigation | [ ] 865 RSI (405(g)) | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | [ ] 791 Employee Retirement Income Security Act | | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | **FEDERAL TAX SUITS** | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate Sentence | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 896 Arbitration |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | | |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 462 Naturalization Application | | [ ] 950 Constitutionality of State Statutes |
| | | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | |
| | [ ] 448 Education | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*
- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
18 USC 1962(c)

Brief description of cause:
breach of contract, conspiracy, wire and mail fraud, defamation, RICO

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
- DEMAND $ $500,000.00
- CHECK YES only if demanded in complaint:
- JURY DEMAND: [x] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE: December 8, 2020
SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW MEXICO

| | |
|---|---|
| **Dr. William Gardner, DDS**<br><br>*Plaintiff*<br><br>v.<br><br>**Delta Dental Plan of New Mexico, Inc., Delta Dental Plan of Michigan, Inc., Edward J. Lopez, Jr.**, as an individual and in his capacity as CEO, **Jesus C. Galvan, DDS** as an individual and in his capacity as CFO, and **Jason Louis Snider**, as an individual and in his capacity as a manager.<br><br>*Defendants* | CIVIL ACTION<br><br>Case No:  1:20-cv-1271 |

## VERIFIED COMPLAINT FOR DECLARATORY RELIEF, AND MONEY DAMAGES

Plaintiff Dr. William Gardner, DDS (Plaintiff), by and through his undersigned counsel of record, files this verified complaint for Declaratory Relief and Money Damages, and respectfully shows this Court the following:

## JURISDICTION AND VENUE

This court has jurisdiction under 28 U.S.C. § 1331 because part of this action arises under the Federal Law of the United States.

This court has supplemental jurisdiction over any State Law claims pursuant to 28 U.S.C. § 1367.

Venue is proper under 28 U.S.C. § 1391 (b) because a substantial part of the events giving rise to the claim occurred in this district.

## THE PARTIES

Plaintiff, Dr. William Gardner, DDS, is a dentist residing and practicing in Albuquerque, New Mexico since 1996.

Defendant, Delta Dental Plan of New Mexico (DDNM) is a State licensed insurer of dental services provided to policy holders in the State of New Mexico.

Defendant, Delta Dental Plan of Michigan (DDMI) is a State licensed insurer of dental services provided to policy holders in the State of Michigan.

DDNM and DDMI have an agreement whereby they provide network claims management services on behalf of each other.

Defendant, Edward J. Lopez, Jr. (Lopez), is the former Chief Executive Officer for DDNM.

Defendant, Jesus C. Galvan, DDS (Galvan) is the Chief Financial Officer for DDNM.

Defendant, Jason Louis Snider (Snider) is in a managerial capacity for DDMI and resides in the State of Michigan.

## FACTUAL ALLEGATIONS

Plaintiff William Gardner, DDS has been a practicing dentist in New Mexico since 1996 and was until 2014 an "in network" Delta Dental Plan Premier provider.

In 2012, the Chief Financial Officer of Delta Dental Plan of New Mexico (DDNM), Dr. Jesus Galvan, DDS, contacted Plaintiff and demanded that Plaintiff waive payment for services Plaintiff had provided to a patient that made a complaint to DDNM indicating that he was dissatisfied with the work that Dr. Gardner had performed.

Plaintiff refused, stating that he had performed the services and was entitled to payment. DDNM had pre-approved the services provided by Plaintiff to the DDNM policy holder, prior to the date of service. Plaintiff stated that he was asked by Galvan to remove the patient's uninsured portion of the total charge from her bill. Plaintiff Gardner rightfully refused to do so.

In response, Jesus Galvan stated in a telephone call to the Plaintiff, "Do you know who I am? I'm the CFO of Delta Dental and if you don't do what I tell you I will kick you off the network. I have done it before, and I will do it again." As Plaintiff's investigation

3

later revealed, Dr. Galvan has in fact kicked other dentists out of the Delta Dental network in retaliation for their failure to grant him special favors and placate his ego to his satisfaction.

Plaintiff represents that Dr. Galvan of DDNM has been specifically called by his cronies on the Dental Board as a witness in three complaints against other dentists filed with that governing board.

Our research has shown that no other dental insurance companies CFOs or CEOs have been personally and/or corporately involved with Dental complaints filed against New Mexico dentists, with the sole exception of DDNM.

Because Plaintiff was contractually entitled to payment under his Premier Provider contract, he persisted in his refusal to waive payment for the services he had provided. In accordance with New Mexico Law, all dental insurance payments must be made in 30 days if filed electronically, or 45 days for a manual claim. DDNM and DDMI are third party administrators (TPA) as defined by New Mexico law.

Because Plaintiff refused to waive payment for services as demanded by the CFO of DDNM, and did not show sufficient deference to satisfy Dr. Galvan's vanity, Jesus Galvan leveraged his position as CFO of DDNM to unlawfully retaliate against Plaintiff and his dental practice.

Under the direction of Dr. Jesus Galvan, Plaintiff was placed on the "Focus Review" program, which required additional clinical documentation to be provided to DDNM to get payment for services. To this day, Dr. Gardner is still on this "Focus

4

Review", with no guidance from DDNM as to how he may have this burdensome requirement removed. Since 2014, Dr. Gardner is an out of network provider. Dr.Gardner's legitimate claims are not being paid because of this Focus Review process. Dr. Gardner believes he is the only dentist in the country that has been subjected to ongoing Focus Review for the last 6 years.

As the DDNM CFO, Dr. Galvan's first act of retaliation against Plaintiff was to use his position to direct Delta Dental to stop paying Plaintiff's claims due for work he performed for patients. Plaintiff responded by filing suit against Delta Dental for breach of contract in 2014, seeking the unpaid claims, in Albuquerque District Court in 2014, under case no. D-202-CV-201402082.

Then, in retaliation for Plaintiff's State Court lawsuit seeking payment of his claims, Delta Dental began actively soliciting complaints from his patients in a campaign to destroy Plaintiff's dental practice and reputation.

Specifically, prior to the original phone call to Plaintiff by Jesus Galvan, Plaintiff had only one complaint against him in his 23 years of practice and had been exonerated of the allegations in the complaint.

After Plaintiff refused to waive payment, Delta Dental and persons under its influence began to solicit, prosecute, and facilitate **six** baseless complaints against Plaintiff before the New Mexico Dental Board in an effort to damage his dental practice in retaliation for his refusal to satisfy the vanity of the CFO of Delta Dental, Jesus Galvan.

These false allegations included:

5

a. Abandonment of a patient; of which Plaintiff was exonerated.

b. Gross negligence: of which Plaintiff was exonerated.

c. Fraudulently altering x-rays; of which Plaintiff was exonerated

d. Other allegations, which remain pending.

These baseless complaints were improperly solicited from patients by Delta Dental, and in some cases improperly filed directly by Delta Dental without cause.

As Plaintiff continued to oppose Delta Dental's unlawful retaliation against him, Delta Dental's retaliation against him spiraled out of control. In 2014, the Delta Dental Board members in Michigan improperly voted Plaintiff out of the Delta Dental Premier Network without grounds. The vote was in breach of DDNM's contract with Plaintiff. By unreasonably voting Plaintiff out of the Delta Network, Delta caused Plaintiff significant financial and reputational harm.

In 2016, Delta Dental's newly appointed CEO, Ed Lopez, improperly directed a DDNM Vice President, CFO Jesus Galvan, Adele Martinez of DDMM, and his personal secretary to craft a "salacious" and "sensational," press release to slander and defame Gardner in the media with an "investigative reporting expose" advancing false allegations that Gardner had harmed and defrauded patients. When Mr. Lopez's subordinate instead crafted a statement drawn from public record information which complied with the HIPAA requirements that preclude the public disclosure of protected patient treatment information, Ed Lopez demanded that former Vice President Sara Limon craft one that was more "salacious" and "sensational," and demanded that it specifically cite harm that had

6

allegedly befallen Gardner's patients – the disclosure of which would have been illegal under HIPAA.

When this subordinate, Sara Limon, objected to Lopez's unlawful directive, Lopez fired her and found someone else to do it for him.

Lopez and those acting at his direction then unlawfully published by disclosure HIPAA-protected information about Plaintiff's patients to KOB-TV and Jen French. French then directly contacted Dr. Gardner's patients using that protected information, and actively solicited complaints against Dr. Gardner.

Many of these patients stopped utilizing the services of Plaintiff based on falsehoods they were told by these reporters at Delta's behest. This caused Plaintiff significant economic harm. Because of the negative press coverage and letters to Plaintiff's patients from DDNM stating that they should find another dentist, many of these patients stopped utilizing the services of the Plaintiff.

Other patients recognized that Dr. Gardner was being unreasonably mistreated by Delta Dental, told Gardner what was communicated to them by DDNM, and continued to use Dr. Gardner for their dental treatment.

As continuing retribution against Plaintiff, DDNM CEO Ed Lopez made an emergency 911 call and filed a false police report against Dr. Gardner. The 911 call (which was recorded on audio as required by law) alleged that DDNM was afraid Gardner might come into his large five story office complex and perform an "Orlando Style Shooting." Lopez made this statement despite never having met Gardner, and admittedly had no basis

7

for any professed concern for his safety. CEO Lopez distributed a picture of Dr. Gardner with Gardner's family to all the employees, as well as the front desk staff so that they could presumably identify Dr. Gardner if he happened to come to a DDNM facility. All staff members were instructed to contact the police immediately if he came to the building.

In 2018, Delta Dental, utilizing its agents on the New Mexico Dental Board, successfully worked to improperly suspended Plaintiff's dental license for 60 plus days, and did so without notifying him that the suspension was in effect, causing him to unwittingly practice dentistry while his license was suspended.

Because Plaintiff's license was suspended for 60 days, Plaintiff was removed from the Delta Dental list of out-of-network providers, United Concordia, MetLife, the Veterans Administration, Blue Cross and Blue Shield, and Molina Dental network, making him significantly more expensive to virtually all potential patients, further damaging his dental practice.

Additionally, because Plaintiff's license was unlawfully suspended for 60 days without notifying him of the suspension, Plaintiff has not been able to collect the money due for work performed during the suspension period on patients subscribed to these additional insurance companies, causing him significant financial harm.

The harassment of the Plaintiff by the named Defendants still employed by DDNM and DDMI continues to this day, and has resulted in significant financial damage, and reputation damage to Plaintiff and his dental practice.

## CAUSES OF ACTION

One, **BREACH OF CONTRACT:** In retaliation for the refusal of the Plaintiff to bend to the demands of Defendants to waive a payment due the Plaintiff for services provided to a DDNM insured, Plaintiff was terminated as a DDNM Preferred Provider in 2014. He was then demoted to an out of network provider, which then changed his contractual relationship with DDNM to one of a third-party beneficiary to a contract based on trade practice between DDNM, its policy holders, and its out of network providers in the State of New Mexico.

DDNM has a contractual relationship with its policy holders to pay for dental services and procedures. These policy holders generally assign their rights to payment for dental services to the dentist providers, who then issue the claim for payment to DDNM on behalf of the policy holders. The assignment of payment from the policy holder then makes the dentist providers a third-party beneficiary to a payment from DDNM, paid on behalf of the policy holders.

Defendants have breached this implied in fact contract with the Plaintiff by their refusal to pay Dr. Gardner and have violated the implied covenant of good faith and fair dealing.

Two, **CONSPIRACY TO COMMIT BREACH OF CONTRACT:** In 2012, Defendant Galvan and DDNM, in concert with Defendants Lopez and Snider, commenced a multi-year, scorched-Earth conspiracy to destroy the dental practice of Plaintiff. Working in concert, they slow-walked, and in the majority of cases simply refused to pay the submitted dental claims of Plaintiff. These Defendants ultimately succeeded in terminating the Premier Provider status of the Defendant in 2014. Without a cooperative conspiracy between these individuals, on behalf of themselves, and also as executives of DDNM and DDMI, it would be unlikely that the Plaintiff's claims could remain unpaid to this day.

Three, **UNJUST ENRICHMENT:** As a result of the unjustified refusal to pay the Plaintiff's claims for service, the Defendants have been unjustly enriched by the current sum of more than $500,000.00. This amount increases daily by the number and value of claims filed.

Four, **WIRE FRAUD AND MAIL FRAUD:** DDNM and DDMI have a joint operations agreement between themselves to manage and process their provider network and the claims for service submitted by those providers. These claims are transmitted across state lines on the public wired telecommunications system and also sent by the Defendants via US Mail between DDNM and DDMI. As a result of these interstate

communications, Defendants have violated the Federal Statutes in 18 U.S.C §§ 1343 and 1341 in the commission of wire and mail fraud.

Five, **TORTIOUS INTERFERENCE:** The Delta Dental organization is a virtual monopoly provider for dental insurance in the State of New Mexico, leaving only a handful of citizens that choose an alternative dental insurer. The Defendants have scurrilously furnished the States' few additional dental insurers with disparaging information about the Plaintiff's dental practice, causing two of those insurers to cancel for a time the contractual relationship between those insurers and the Plaintiff. The resultant cancellation and suspension of payments to the Plaintiff's dental practice has produced a financial hardship, and damage to the Plaintiff's reputation among his patients.

Six, **DEFAMATION**: In retaliation for his refusal to bend to the will of DDNM, Defendant Lopez commenced on a campaign to smear Plaintiff, and unsuccessfully attempted to coerce his subordinates to participate in this scheme. Ultimately, under the direction of Defendant Lopez, a dossier of false and disproven information was published to a reporter at KOA-TV in Albuquerque who then took that information and produced a defaming and damaging "expose" on the Plaintiff which resulted in financial damage to Plaintiff's practice and community reputation.

Seven, **VIOLATION OF § 1962(c) OF THE RICO ACT:** Since 2014, the individual defendants in the instant case have conspired, cooperated, and engaged in a pattern of racketeering designed to financially destroy the Plaintiff and his dental practice. Solely as retribution for the Plaintiff rebuking the demand that he waive the charges on a valid claim, the Defendants have refused to pay most claims submitted for payment by the Plaintiff. The Defendants have required the Plaintiff to unreasonably provide unnecessary additional backup for his claims, they have provided no reason for this requirement, they have not provided a pathway out of this requirement, and they have simply refused to reimburse the Plaintiff's claims on an arbitrary basis as punishment for his failure to kneel to the Delta Dental monopoly. The Defendant's pattern of racketeering continues to this day, and the outstanding balance of these claim payments owed to the Plaintiff currently amounts to over $500,000.00 in unpaid claims.

## PRAYER FOR RELIEF

The Plaintiff respectfully asks the court for the following relief:

1. The Court to order Defendants Delta Dental of New Mexico and Delta Dental of Michigan to immediately pay all outstanding claims submitted for payment by the Plaintiff.

2. The Court to order the Defendants to pay damages to the Plaintiff to his dental practice because of their defamation of the Plaintiff.

3. The Court to award the money damages to be determined at trial, to the dental practice of the Plaintiff as a result of their tortious interference with the Plaintiffs relationship with any other dental insurance carriers, and to order the Defendants to make immediate payment of those damages.

4. The Court to order treble damages on the RICO claim in an amount to be calculated at trial.

5. All of the Plaintiff's attorney fees and costs to be reimbursed to the Plaintiff by the Defendants.

6. Any other damages or injunctive relief the Court may deem important.

**The Plaintiff respectfully requests a trial by jury.**

## CERTIFICATION

The signature of Plaintiff, Dr. William Gardner, DDS, constitutes a certification by him that he has read the pleading; that to the best of his knowledge, information, and belief formed after reasonable inquiry, it is well grounded in fact, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needlessly increase the cost of litigation.

Dr. William Gardner, DDS
*Plaintiff*

The signature of attorney J. Patrick Laux constitutes a certification by him that he has authored the pleading; that to the best of his knowledge, information, and belief formed after reasonable inquiry, it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needlessly increase the cost of litigation.

_____
J. Patrick Laux
NM Bar #152708
625 W Southern Ave
Suite E-167
Mesa, AZ 85210
p.laux@theomnifirm.com
(623)206-0040

December 8, 2020

I HEREBY CERTIFY that on the 8th day of December 2020, I filed the foregoing Complaint electronically through the Federal ECM/CMF system, requesting that the following Defendants be served:

Jesus Carlos Galvin, DDC
708 Via Posada SE
Albuquerque, NM 87123

Edward Lopez
1727 Valdez Ln
Albuquerque, NM 87112

Jason Louis Snider
735 Mitchell St.
Potterville, MI 48876

Delta Dental of New Mexico
100 Sun Avenue NE
Suite 400
Albuquerque, NM 87109

Delta Dental of Michigan
4100 Okemos Rd.
Okemos, MI 48864

_____
J. Patrick Laux
*Attorney for Plaintiff*

15