# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW MEXICO

DR. WILLIAM C. GARDNER, DDS, *dba*
DR. WILLIAM C. GARDNER, DDS, P.A.,

      Plaintiff,

v.                                          20-cv-01271-DHU-LF

DELTA DENTAL PLAN OF NEW
MEXICO, INC., DELTA DENTAL PLAN
OF MICHIGAN, INC., EDWARD J.
LOPEZ, JR., as an Individual and in his
capacity as CEO, JESUS C. GALVAN,
DDS, as an individual and in his capacity as
CFO, and JASON LOUIS SNIDER, as an
individual and in his capacity as manager,

      Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

      This matter is before the Court on Defendants Delta Dental Plan of New Mexico, Inc.,

Delta Dental Plan of Michigan, Inc., Jesus C. Galvan, DDS, and Jason Louis Snider's

("Defendants") Joint Motion to Dismiss Civil Complaint for Money Damages as *Res Judicata*

("Motion to Dismiss") (Doc. 62).  Plaintiff William C. Gardner, DDS responded (Doc. 75) and

Defendants replied (Doc. 84).  After considering the briefs, applicable law, and being otherwise

fully informed, the Court concludes that Defendants' Motion to Dismiss (Doc. 62) will be

**GRANTED.**

      This matter is also before the Court on Delta Dental Plan of Michigan, Delta Dental Plan

of New Mexico, Jesus C. Galvan, DDS, and Jason Louis Snider's Motion to Dismiss Pursuant to

Rule 12(b)(6) (Doc. 65), which is **DENIED** as **MOOT** in light of the Court's granting of the *res*

*judicata* Motion to Dismiss.

# BACKGROUND

Plaintiff is a dentist residing in Albuquerque, New Mexico.  Doc. 33 at 2 (Second Amended Complaint for Money Damages in a Civil Action).**¹**  Plaintiff brought this action against Delta Dental Plan of New Mexico ("DDNM") and Delta Dental Plan of Michigan ("DDMI"), both of which are state-license insurers of dental services provided to policyholders in the states of New Mexico and Michigan, respectively.  *Id.*  Plaintiff also brought this case against Edward J. Lopez, Jr., the former Chief Executive Officer for DDNM;² Jesus C. Galvan, the Chief Financial Officer for DDNM; and Jason Louis Snider, who is in a "managerial capacity" for DDMI.  *Id.* at 2-3.

Plaintiff began practicing as a dentist in New Mexico in 1996.  *Id.* at 3.  Plaintiff was an "in network" Delta Dental Plan Premier Provider until 2014.  *Id.*  In 2012, Defendant Galvan "contacted Plaintiff and demanded that Plaintiff waive payment for services Plaintiff had provided to a patient that made a complaint to DDNM indicating that he was dissatisfied with the work that Dr. Gardner had performed."  *Id.*  Plaintiff refused.  *Id.*  Defendant Galvan told Plaintiff, "[I]f you don't do what I tell you I will kick you off the network.  I have done it before, and I will do it again."  *Id.* at 4.  After this incident, Plaintiff was placed on the "Focus Review" program, which required Plaintiff to provide additional clinical documentation to DDNM in order to receive payment for his dental services.  *Id.*

In 2014, after DDNM stopped paying Plaintiff's claims for work he performed for patients

---

¹ The Court accepts as true Plaintiff's well-pleaded facts and views them in the light most favorable to Plaintiff.  *See Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (citing *Smith v. United States,* 561 F.3d 1090, 1098 (10th Cir.2009)).

² On June 16, 2021, Plaintiff filed a stipulation of dismissal stipulating that "this action be dismissed, as to Defendant Edward J. Lopez, Jr. **only** and both as an individual and as the former Chief Executive Officer of Delta Dental Plan of New Mexico, Inc. with prejudice as to all claims and causes of action asserted by Plaintiff against Defendant Edward J. Lopez, Jr."  Doc. 92 at 1.

contract with DDNM, Plaintiff filed suit against DDNM in New Mexico State District Court, case number D-202-CV-2014-02082. [3]  *Id.* at 5.  After Plaintiff filed the State Case, DDNM began soliciting complaints from his patients in a campaign to destroy Plaintiffs dental practice and reputation."  *Id.*  Six complaints were filed against Plaintiff before the New Mexico Dental Board. *Id.* at 6.

DDNM continued to retaliate against Plaintiff.  *Id.*  In 2014, the Delta Dental Board voted Plaintiff out of the Delta Dental Premier Network without grounds.  *Id.*  This caused Plaintiff "significant financial and reputational harm."  *Id.*  In 2016, Defendant Lopez and others acting at his direction issued a press release about Plaintiff, which included protected health information about Plaintiff's patients.  *Id.* at 7.  Many of Plaintiff's patients stopped using his services after this negative press coverage, causing him financial harm.  *Id.* at 7-8.  Other patients continued to see Plaintiff for dental services.  *Id.* at 8.  Defendant Lopez also called 911 and made a false police report against Plaintiff alleging that DDNM was afraid that "Plaintiff might come into his large five story office complex and perform an 'Orlando Style Shooting.' "  *Id.*

In 2018, Plaintiff's dental license was suspended for 60 plus days.  *Id.* at 8-9.  Because Plaintiff's license was suspended, DDNM removed Plaintiff from their list of providers and other provider lists for other networks.  *Id.* at 9.  Plaintiff did not know his license was suspended so he continued to practice during the suspension, and Plaintiff has been unable to collect payment for work performed during this period.  *Id.*  In 2019, DDNM facilitated filing another complaint with the New Mexico Board of Dentistry.  *Id.*  Plaintiff's license was revoked on January 1, 2020.  *Id.*

---

[3] Pursuant to Rule 201 of the Federal Rules of Evidence, the Court hereby takes judicial notice of this state case, *William C. Gardner D.D.S., P.A., v. Delta Dental Plan of New Mexico, Inc. et al.*, filed in the State of New Mexico, County of Bernalillo, Second Judicial District Court, Cause No. D-202-CV-2014-02082 ("State Case").

The revocation was initially stayed, but then the stay was lifted in the revocation proceedings went forward. *Id.* at 10. Plaintiff did not receive notice of the Dental Board proceedings and his license was revoked on or about December 12, 2020. *Id.*

In this matter, Plaintiff brought seven causes of action against Defendants for: Breach of Contract, Conspiracy to Commit Breach of Contract, Unjust Enrichment, Wire Fraud and Mail Fraud, Tortious Interference, Defamation, and Racketeering. *Id.* at 11-15.

On May 6, 2021, Defendants filed a Joint Motion to Dismiss Civil Complaint for Money Damages as *Res Judicata* (Doc. 62). Defendants request the Court dismiss Plaintiff's Second Amended Complaint (Doc. 33) with prejudice pursuant to Fed. R. Civ. P. 12(b)(6). It is to this issue that the Court now turns.

## LEGAL STANDARD

Rule 12(b)(6) allows for the dismissal of a complaint where the plaintiff has failed to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a plaintiff must allege facts that "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed.2004)). A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). To satisfy the plausibility standard, a plaintiff's allegations must show that defendant's liability is more than a "sheer possibility." *Id.*

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006) (internal citation omitted). In considering dismissal under Rule 12(b)(6), the

4

Court will "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (citing *Beedle v. Wilson,* 422 F.3d 1059, 1063 (10th Cir.2005)). A complaint will survive a Rule 12(b)(6) motion if it "contains 'enough facts to state a claim to relief that is plausible on its face.' " *Id.* (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

A Rule 12(b)(6) motion is generally decided on the face of the pleadings themselves, and consideration of matters outside the pleadings generally converts a Rule 12(b)(6) motion into a motion for summary judgment. *Utah Gospel Mission v. Salt Lake City Corp.*, 425 F.3d 1249, 1253 (10th Cir. 2005) (citing Fed.R.Civ.P. 12(b); *Miller v. Glanz,* 948 F.2d 1562, 1565 (10th Cir. 1991)). However, the Tenth Circuit has recognized that "facts subject to judicial notice may be considered in a Rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment." *Hogan*, 453 F.3d at 1264-65 n.24 (citing *See Grynberg v. Koch Gateway Pipeline Co.,* 390 F.3d 1276, 1278 n. 1 (10th Cir.2004)). "This includes another court's publicly filed records 'concerning matters that bear directly upon the disposition of the case at hand.' " *Hodgson v. Farmington City*, 675 F. App'x 838, 840-41 (10th Cir. 2017) (quoting *United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007)).

## A. *Res Judicata*

"Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). Res judicata promotes judicial economy by reducing unnecessary, duplicative litigation and promotes comity between separate jurisdictions by fostering reliance on existing adjudications. *Id.* 95-96 (citing *Younger v. Harris*, 401 U.S. 37, 43-

45, 91 S.Ct. 746, 750-51, 27 L.Ed.2d 669 (1971)).  "Res judicata is an affirmative defense, but may be raised in a motion to dismiss if the facts supporting the defense appear on the face of the complaint, or in documents subject to judicial notice, or if there is no factual dispute." *Navajo Nation v. Wells Fargo & Co.*, 344 F. Supp. 3d 1292, 1302 (D.N.M. 2018) (citations omitted).

According to New Mexico law, "[r]es judicata is a judicially created doctrine designed to promote efficiency and finality by giving a litigant only one full and fair opportunity to litigate a claim and by precluding any later claim that could have, and should have, been brought as part of the earlier proceeding." *Potter v. Pierce*, 2015-NMSC-002, ¶ 1, 342 P.3d 54.[4] "The underlying principle behind res judicata is to 'relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and by preventing inconsistent decisions, encourage reliance on adjudication.'" *Three Rivers Land Co., Inc. v. Maddux*, 1982-NMSC-111, ¶ 21, 98 N.M. 690, *overruled on other grounds*, *Universal Life Church*, 1986-NMSC-068, ¶¶ 7-9 (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)).  "[A]dministrative adjudicative determinations may be given preclusive effect if rendered under conditions in which the parties have the opportunity to fully and fairly litigate the issue at the administrative hearing." *Shovelin v. Cent. New Mexico Elec. Co-*

---

[4] Defendants argue that the law of New Mexico applies to the Court's determination of the preclusive effect of the underlying state court case and administrative actions.  Doc. 62 at 7.  Plaintiff does not appear to dispute this, and like Defendants, refers to New Mexico state cases throughout his Response.  *See e.g.* Doc. 75 at 7-10.  The Court agrees that New Mexico law applies to its resolution of the res judicata and collateral estoppel arguments presented in the Motion to Dismiss because the preclusive effect of a state court judgment in the context of a subsequent suit in federal court is determined by state law.  *See Parsons Steel, Inc. v. First Alabama Bank,* 474 U.S. 518, 523 (1986) (under the Full Faith and Credit Act, 28 U.S.C. § 1738, a "federal court must give the same preclusive effect to a state-court judgment as another court of that State would give").  *See also Jarrett v. Gramling,* 841 F.2d 354, 356 (10th Cir. 1988) (claim preclusive effect of state court judgment in context of a subsequent suit in federal court under § 1983 is determined by state law).  "It has long been established that § 1738 does not allow federal courts to employ their own rules of res judicata in determining the effect of state judgments.  Rather, it goes beyond the common law and commands a federal court to accept the rules chosen by the State from which the judgment is taken."  *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 481-482, (1982).

*op., Inc.*, 1993-NMSC-015, ¶ 12, 115 N.M. 293, 298, 850 P.2d 996, 1001 (internal citations omitted). The party asserting res judicata must establish that (1) there was a final judgment in an earlier action, (2) the earlier judgment was on the merits, (3) the parties in the two suits are the same, and (4) the cause of action is the same in both suits. *Kirby v. Guardian Life Ins. Co. of Am.*, 2010-NMSC-014, ¶ 61, 148 N.M. 106, 231 P.3d 87 (citing *City of Sunland Park v. Macias,* 2003-NMCA-098, ¶ 18, 134 N.M. 216, 75 P.3d 816).

### B. Collateral Estoppel

"[C]ollateral estoppel, also called issue preclusion, prevents a party from re-litigating ultimate facts or *issues* actually and necessarily decided in a prior suit." *Ullrich v. Blanchard*, 2007-NMCA-145, ¶ 19, 142 N.M. 835, 839, 171 P.3d 774, 778 (internal quotation marks and citations omitted). Collateral estoppel requires that four elements be present:

> (1) the party against whom collateral estoppel is asserted must be the same party or be in privity with the party to the original action; (2) the subject matter or the cause of action in the two suits must be different; (3) the ultimate facts or issues must have been actually litigated; and, (4) the issue must have been necessarily determined.

*State v. Bishop*, 1992-NMCA-034, ¶ 8, 113 N.M. 732, 734, 832 P.2d 793, 795 (citation omitted). "If the party invoking the doctrine establishes a prima-facie case, then the burden shifts to the party opposing collateral estoppel to show that he or she was not afforded a fair opportunity to litigate the issue in the prior proceeding." *Hartnett v. Papa John's Pizza USA, Inc.*, 828 F. Supp. 2d 1278, 1286 (D.N.M. 2011) (citing *Padilla v. Intel Corp.,* 1998-NMCA-125, 125 N.M. 698, 701, 964 P.2d 862, 865; *State v. Bishop,* 1992-NMCA-034, 113 N.M. 732, 734, 832 P.2d 793, 795).

### DISCUSSION

Plaintiff brings causes of action for Breach of Contract, Conspiracy to Commit Breach of Contract, Unjust Enrichment, Wire Fraud and Mail Fraud, Tortious Interference, Defamation, and Racketeering (Doc. 33). Defendants assert that dismissal of Plaintiff's claims is warranted based

on *res judicata* and/or collateral estoppel (Doc. 62).

**I.     Res Judicata**

   **a.   Whether the Parties in the Two Suits are the Same**

   "Res judicata's privity requirement applies to both the parties in the previous action and those with whom the parties are in privity." *Fogelson v. Wallace*, 2017-NMCA-089, ¶ 26, 406 P.3d 1012 (citing *Deflon v. Sawyers*, 2006-NMSC-025, ¶ 2, 139 N.M. 637, 137 P.3d 577 ("Res judicata prevents a party or its privies from repeatedly suing another for the same cause of action."). "Privity requires, at a minimum, a substantial identity between the issues in controversy and showing that the parties in the two actions are really and substantially in interest the same." *Boyd Estate ex rel. Boyd v. United States*, 2015-NMCA-018, ¶ 25, 344 P.3d 1013 (quoting *Deflon*, 2006-NMSC-025, ¶ 4, 139 N.M. 637, 137 P.3d 577).

   "[P]rivity may exist when the interests of a corporate entity and members of its ownership group 'fully coincide.' " *Fogelson*, 2017-NMCA-089, ¶ 26, 406 P.3d 1012 (quoting Restatement (Second) of Judgments § 59 cmt. e, at 99). In *Fogelson*, a man serving as the president and vice president of a corporate entity was found to be in privity with the entity because he controlled the transactions at issue and "exercised the type of control contemplated in . . . the Restatement (Second) of Judgments, which discusses the possibility that 'the enterprise is a proprietorship or partnership conducted in corporate form.' " 2017-NMCA-089, ¶ 30, 406 P.3d 1012 (quoting Restatement (Second) of Judgments § 59 cmt. e, at 99).

   Outside of the corporation context, an entity and its agents may be in privity when the agents act in their official capacity on behalf of the entity. *See Ballard v. GEO Grp., Inc.*, No. A-1-CA-35451, mem. op. ¶ 16, 2018 WL 4380794, at *4 (N.M. Ct. App. Aug. 15, 2018) (unpublished) (finding that prison employees were in privity with GEO Group Inc. because they

were employees of GEO and were "sued on the basis of their status and actions as GEO employees."). Privity does not exist when a plaintiff alleges a defendant "acted outside the scope of their corporate authority." *Deflon*, 2006-NMSC-025, ¶ 10, 139 N.M. 637, 137 P.3d 577.

Defendants argue that Dr. Gardner and the Practice are "in privity for the purposes of res judicata because Dr. Gardner controlled the Practice in the litigation and underlying transactions and because Dr. Gardner was and is the principal owner of the Practice," Doc. 62 at 9, and that there is "privity among DDNM and its officers (i.e., Lopez and Galvan) and among DDMI and its employee (Snider)." *Id.* at 10. Plaintiff responds that: "[n]one of the named Individual Defendants were Defendant-Parties in regard to the State Court Case; and, therefore, there is no preclusive effect to any of the Individual Defendants vis a vis the State Court Case." Doc. 75 at 11.

The Court finds that the parties in this suit and the State Case are in privity. First, in the State Case, the Plaintiff was "William Gardner D.D.S. P.A.," the dental practice. Doc. 62-1 at 1 (March 24, 2014 State Complaint). In this case, Plaintiff is the individual. *See* Doc. 33 at 2 ("Plaintiff, Dr. William C. Gardner, DDS, is a dentist . . ."). The interests of the Practice and Plaintiff fully coincide because Plaintiff is the President of the Practice, Doc. 62-1 at 11 (Verification to March 24, 2014 State Complaint), and the Practice is "his practice entity." Doc. 33 at 2. Additionally, Plaintiff does not appear to dispute there is privity between Plaintiff and the Practice. As a result, the Court finds the plaintiffs in the two cases are in privity.

Regarding Defendants, the Court finds privity also exists. The Court agrees with Defendants that while the Complaint's caption in this matter lists the individual Defendants in their individual and official capacities, the facts alleged in the Complaint relate to allegations of acts that the individual Defendants took in the scope of their duties with DDNM and DDMI. *See* Doc. 62 at 10. Though these individuals were not named in the State Case, the Court finds that privity

9

exists among DDNM and Lopez and Galvan (its officers) and DDMI and Snider, its employee, because Plaintiff has sued these individuals on the basis of their status and actions as agents of DDNM and DDMI respectively, as occurred in *Ballard*, No. A-1-CA-35451, mem. op. ¶ 16, 2018 WL 4380794, at *4.   Plaintiff does not allege these defendants acted outside the scope of their corporate authority, as occurred in *Deflon*.   DDNM and DDMI are the same parties as in the State Case, and there is privity among DDNM and Lopez and Galvan, and among DDMI and Snider. In sum, the first res judicata element – whether the parties in the two suits are the same – is satisfied.

### b.  Whether There was a Final Judgment on the Merits in the Earlier Action

Under the res judicata doctrine, a plaintiff "must have had a full and fair opportunity to litigate the claim in the original action and there must have been a final decision on the merits." *Moffat v. Branch*, 2002-NMCA-067, ¶ 17, 132 N.M. 412, 49 P.3d 673 (citing *Wolford v. Lasater*, 1999-NMCA-024, ¶ 5, 126 N.M. 614, 973 P.2d 866).   Several types of adjudications are considered final judgments on the merits.   As relevant here, first, "[a] dismissal with prejudice is an adjudication on the merits only to the extent that when a claim has been dismissed with prejudice, the fourth element of res judicata (a final valid judgment on the merits) will be presumed so as to bar a subsequent suit against the same defendant by the same plaintiff based on the same transaction."   *Kirby*, 2010-NMSC-014, ¶ 66, 148 N.M. 106, 231 P.3d 87.   Next, "a summary judgment is a decision on the merits of the case."   *Cordova v. State, Tax'n & Revenue, Prop. Tax Div.*, 2005-NMCA-009, ¶ 38, 136 N.M. 713, 723, 104 P.3d 1104, 1114 (quoting 10B Charles Alan Wright, Arthur R. Miller and Mary Kay Kane, *Federal Practice & Procedure* § 2735, at 303-04 (3d ed.1998) (footnotes omitted)).   *See also Campos v. Brown Const. Co.,* 1973-NMCA-140, ¶ 14, 85 N.M. 684, 686, 515 P.2d 1288, 1290 ("A summary judgment is a final judgment. Generally

speaking, dismissal with prejudice constitutes an adjudication of the merits and is thus res judicata of the issues between the parties and their privies.") (citations and internal quotation marks omitted).

Lastly, Defendants argue that "substantial persuasive authority indicates that denial of leave to amend ordinarily functions as a final adjudication on the merits of the proposed additional claims for res judicata purposes." Doc. 62 at 11. Defendants offer *Arrigo v. Link*, 836 F.3d 787 (7th Cir. 2016) in support, where the Seventh Circuit surveyed authority from Eleventh, Eighth, Third, and Fifth Circuits. In *Arrigo*, the Court found that "[w]hile our circuit has not yet decided whether the denial of a motion to amend constitutes a decision on the merits for res judicata purposes, other circuits have uniformly found that res judicata applies in such a situation." 836 F.3d 787, 799 (citations omitted). Additionally, "[a]n order that denies leave to amend the pleadings to advance an additional part of a claim partially asserted might seem to fall within the principle that a plaintiff should be free to bring a second action on a theory that could not be advanced in the first action. It appears well-settled, however, that claim preclusion bars a second action on the part excluded from the first action." *Id.* (quoting 18 Charles Alan Wright et al., *Federal Practice and Procedure* § 4412 (2d ed. 2016)). The Court is persuaded based on the weight of this persuasive authority that denial of leave to amend can be considered a final judgment on the merits of a claim for res judicata purposes.

Here, Defendants present a detailed chart illustrating that the State Case "yielded the following final judgments on the merits of Gardener's claims." Doc. 62 at 11. All of the claims were disposed of either via dismissal with prejudice, summary judgments, and/or orders denying leave to amend. *See id.* at 11-13. Plaintiff does not appear to refute the accuracy of Defendants' summary. *See* Doc. 75 at 11 ("the state court case dealt only with the issues and facts in that case

11

– there is NO final judgment in regard to the claims in the present action").  Plaintiff does not appear to argue that there was no final judgment on the merits in the State Case.  Instead, Plaintiff disagrees with Defendants' argument that this action involves the same cause of action as the State Case, which will be addressed in the section below.

The Court has reviewed the claims adjudicated in the State Case and agrees all were final judgments on the merits, either via dismissal with prejudice, summary judgments, or orders denying leave to amend.  This, in conjunction with the fact that Plaintiff does not argue that final judgment was not entered in the State Case, leads the Court to find that there was a final judgment on the merits in the State Case, thus satisfying this element of res judicata.

### c.   Whether the Cause of Action is the Same in Both Suits

To determine whether the cause of action is the same in both suits for res judicata purposes, New Mexico has adopted the "transactional approach" set forth in the *Restatement (Second) of Judgments* ("*Restatement*").  *Moffat v. Branch*, 2005-NMCA-103, ¶ 17, 138 N.M. 224, 230, 118 P.3d 732, 738 (citing *Three Rivers Land Co. v. Maddoux*, 1982-NMSC-111, ¶ 27, 98 N.M. 690, 695, 652 P.2d 240, 245, overruled on other grounds by *Universal Life Church v. Coxon*, 1986-NMSC-086, ¶ 27, 105 N.M. 57, 728 P.2d 467).  The *Moffat* Court summarized that under this approach,

> a claim is evaluated in factual terms, regardless of the legal theories raised or relief sought, and that under modern procedural rules, this approach "reflects the expectation that parties who are given the capacity to present their entire controversies shall in fact do so."

*Moffat*, 2005-NMCA-103, ¶ 17 (citing *Restatement* § 24 cmt. a at 198 (internal quotation marks omitted)).  "The transactional approach considers all issues arising out of a 'common nucleus of operative facts' as a single cause of action."  *Potter v. Pierce*, 2015-NMSC-002, ¶ 11, 342 P.3d 54, 57 (quoting *Anaya v. City of Albuquerque,* 1996-NMCA-092, ¶ 8, 122 N.M. 326, 924 P.2d

735).  "The facts comprising the common nucleus should be identified pragmatically, considering (1) how they are related in time, space, or origin, (2) whether, taken together, they form a convenient trial unit, and (3) whether their 'treatment as a single unit conforms to the parties' expectations or business understanding or usage." *Potter*, 2015-NMSC-002, ¶ 11 (quoting *Anaya*, 1996-NMCA-092, ¶ 12.  Ultimately, "a cause of action is to be viewed in the context of the transaction from which it arose without regard to the various legal theories that may be available to the parties. A claim is essentially equated with the transaction from which it springs." *Myers v. Olson*, 1984-NMSC-015, ¶ 12, 100 N.M. 745, 747, 676 P.2d 822, 824.

Defendants initially argue that "all of the claims Plaintiff states in this action arise from the same operative facts as the State Court Case and can and should have been brought in the State Court Case." Doc. 62 at 14.  However, Defendants note that, to the extent Plaintiff's actions seeks relief for dental services *after* the final judgment in the State Case, "Defendants recognize that any claims on those later services could not merge into the judgment in the initial action. However . . . those claims are nonetheless barred by collateral estoppel . . ." Doc. 62 at 16, n.1.  *See also* Doc. 84 at 6-9.  Plaintiff argues that in this action,

> there is/are multiple claims; and, the measure of damages is wholly distinct from the State Court Case. The issues of law and fact in the instant matter relate, at the base, the right of Plaintiff to be paid as an Assignee. Neither the fact(s) nor law, in regard to the rights and entitlements of Plaintiff, as a direct Assignee from signed assignment of benefits from patient/policy holders, was/were not addressed, at all, in the State Court Case.

Doc. 75 at 12.  Plaintiff goes on to argue that this " Federal Action relate to the rights of the Plaintiff as an Assignee. Those could not have been raised in the State Court Case as Plaintiff was not an Assignee at the time of the State Court Case." *Id.*  He argues the "signed Assignments did not even exist in the State Court Case." *Id.* at 14.  *See also id.* at 13-16.

### i.  Breach of Contract, Conspiracy to Commit Breach of Contract, and Unjust Enrichment Causes of Action

Here, the Court finds that Plaintiff's Breach of Contract, Conspiracy to Commit Breach of Contract, and Unjust Enrichment claims relate to Plaintiff's former contract with DDNM and services he provided to DDNM or DDMI insureds prior to the final judgment in the State Case. *See* Doc. 33 at 11-13.   In the State Case, Dr. Gardner and the Practice already litigated the questions of whether DDNM violated its contract with the Practice by terminating Plaintiff's in-network provider status, *see* Doc. 62-1 at ¶¶ 4-6, 10, 13-14 (Defs.' Ex. A); Doc. 62-6 at ¶¶ 29-34 (Defs.' Ex. F). and whether Plaintiff or his Practice were entitled to payment on insurance claims that DDNM or DDMI denied through the "Focused Review Process." *See* Doc. 62-1 at ¶¶ 7-9, 12 (Def's Ex. A); Doc. 62-6 at ¶¶ 12, 15-18, 25-28 (Def.'s Ex. F); Doc. 62-13 at ¶¶ 65-70 (Defs.' Ex. M).   Plaintiff argues that these three causes of action do not seek relief under the Provider Agreement nor for dental services under that Agreement at the time of the State Case.  Doc. 75 at 13-14.  Plaintiff argues instead that his claims are made "as an Assignee" based on "assignments [that] did not take place until after the State Court case." *Id.* at 14.  However, Plaintiff's arguments to this effect do not change the fact that Complaint (Doc. 33) make no mention of claims based on assignments that took place after the State Case was resolved.  Indeed, the Complaint mentions "assignments" only three times, and in none of these allegations does the Complaint also allege that such assignments took place after the State Case concluded. *See* Doc. 33 at 11-12.  In sum, Dr. Gardner's termination as a Preferred Provider and removal from the Delta Dental network and insurance claims that DDNM or DDMI denied, in whole or in part, prior to final judgment in the State Case constitute a common nucleus and are barred in this matter by *res judicata.*

### ii. Fraud, Tortious Interference, Defamation, and Racketeering Causes of Action

Next, the Court finds that Plaintiff's claims for Wire Fraud and Mail Fraud, Tortious

Interference, Defamation, and Racketeering arise from the same common nucleus of facts litigated in the State Case.[5]  The Court has carefully reviewed the facts in this matter and in the State Case and agrees with Defendants' summary comparison of the facts underlying these claims.  *See* Doc. 62 at 17-18 (table comparing allegations in present matter to allegations in state matter).

Plaintiff argues that these four claims "relate to facts and conduct in regard to the ASSIGNMENT of benefit(s) claims made.  None of the claims asserted, nor the facts asserted in the [Second Amended Complaint (Doc. 33)] in regard to the ASSIGNMENT of benefit(s) claims were ever addressed in the State Court [case.]"  Doc. 75 at 15.  Plaintiff goes on to argue that the "135 Assignment Claims, never the subject matter of any litigation and which postdate the State Court Case, is/are foundational to the SAC."  *Id.* at 16.

The Court must reject Plaintiff's argument.  Plaintiff's Complaint makes no mention of any "135 Assignments" nor does it include facts that such assignments were made after the resolution of the State Case.  Again, the Complaint mentions "assignments" only three times, and in none of these allegations does the Complaint also allege that such assignments took place after the State Case concluded.  *See* Doc. 33 at 11-12.  Instead, the facts in the Complaint, which the Court accepts as true and views in the light most favorable to Plaintiff, *see Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010), arise from the common nucleus of facts that were already litigated in the State Case.  The Court finds that Plaintiff's causes of action for Wire Fraud and Mail Fraud, Tortious Interference, Defamation, and Racketeering are barred by res judicata.[6]

---

[5] The only facts that may not arise from the same common nucleus of facts are the proceedings before the New Mexico Dental Board.  However, Plaintiff clarified in his Response that he is no longer seeking a remedy regarding the participation of DDNM and/or DDMI in administrative proceedings.  Doc. 75 at 15-16.

[6] The Court need not address the parties' remaining arguments as it has already found that dismissal of all claims brought in Plaintiff's Complaint (Doc. 33) is warranted.

**CONCLUSION**

**IT IS THEREFORE ORDERED** that, for the reasons set forth in this Memorandum Opinion and Order, Defendants' Joint Motion to Dismiss Civil Complaint for Money Damages as *Res Judicata* (Doc. 62) is **GRANTED**. Plaintiff's Second Amended Complaint for Money Damages in a Civil Action (Doc. 33) is dismissed with prejudice.

**IT IS FURTHER ORDERED** that Delta Dental Plan of Michigan, Delta Dental Plan of New Mexico, Jesus C. Galvan, DDS, and Jason Louis Snider's Motion to Dismiss Pursuant to Rule 12(b)(6) (Doc. 65) is **DENIED** as **MOOT** because the Court has dismissed Plaintiff's Second Amended Complaint for Money Damages in a Civil Action (Doc. 33) with prejudice.

**IT IS SO ORDERED**.

_____
 DAVID HERRERA URIAS
 UNITED STATES DISTRICT JUDGE